IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS K. KARPF | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| MASSACHUSETTS MUTUAL LIFE | : | NO. 10-1401 |
| INSURANCE COMPANY, ET AL. | : | |

**SURRICK, J.**                                      **MARCH 27 , 2014**

## MEMORANDUM

Presently before the Court are Defendant Massachusetts Mutual Life Insurance Company's Motion to Dismiss (ECF No. 17), and Defendants Harris S. Fishman and First Financial Group's Motion to Dismiss (ECF No. 22).  For the following reasons, the Motions will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiff Douglas Karpf sold insurance for Defendant, Massachusetts Mutual Life Insurance Company ("MassMutual"), for 28 years.  (Am. Compl. ¶ 16, ECF No. 33-2.)[1] Beginning in 2003, Plaintiff entered into a contractual arrangement ("Career Contract") (MassMutual Mot. to Dismiss Ex. A, ECF No. 36)[2] to work under the auspices of Defendant First Financial Group ("First Financial") (Am. Compl. ¶ 20).  In 2007, Plaintiff began to

---

[1] With his Response in opposition to Fishman and First Financial's Motion to Dismiss, Plaintiff filed a Motion for Leave to Amend and attached an amended complaint.  (ECF No. 33-2.)  Defendants did not oppose Plaintiff's Motion for Leave to Amend.  We will grant Plaintiff's Motion for Leave to Amend, and deem the Amended Complaint in ECF Number 33-2 filed.

[2] Plaintiff signed his original Career Contract in 1988, and signed a Career Contract Addendum in 2003.  For purposes of this Memorandum, the term "Career Contract" refers to these documents, as well as all addenda, contained in the Exhibit as furnished by MassMutual.

experience friction in his professional relationship with First Financial and its President and Chief Executive Officer ("CEO"), Defendant Harris S. Fishman ("Fishman"), allegedly in connection with Plaintiff's ongoing separation and divorce from his wife. (*Id.* at ¶¶ 36-39.) In April 2008, Plaintiff left First Financial to work for another agency affiliated with MassMutual, Cowan Financial Group. (*Id.* at ¶ 65.) Plaintiff claims that Defendants complicated his transition from First Financial by restricting his access to relevant business information and by withholding compensation owed him pursuant to the terms of the Career Contract. (*Id.*) On September 27, 2010, Plaintiff filed an Amended Complaint, which includes claims for breach of contract, eight counts of various tortious activity, breach of fiduciary duty, negligent supervision, unjust enrichment, and seeks damages for both economic and physical injuries. MassMutual has moved to dismiss. (MassMutual Mot. to Dismiss, ECF No. 17.) Fishman and First Financial have similarly moved to dismiss, and have joined MassMutual's motion. (Fishman Mot. to Dismiss ¶ 17, ECF No. 22.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Failure to state a claim upon which relief can be granted is basis for dismissal of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "A complaint may not be dismissed because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

In determining whether dismissal is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210–11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief'." *Id.* at 211 (quoting Iqbal 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.'" *Iqbal*, 556 U.S. at 663–64.

## III.    DISCUSSION

Defendants advance several arguments in favor of dismissal. First, Defendants argue that Plaintiff's claim for breach of contract (Count I) lacks substantive merit, and should not be permitted to proceed as to MassMutual. (MassMutual Mot. to Dismiss 7-8.) Second, Defendants argue that Plaintiff's tort claims–Counts II, III, IV, V, VI, VII, VIII, and XIII in the Amended Complaint–are barred pursuant to Pennsylvania's "gist of the action" doctrine. (*Id.* at 10.) Third, Defendants argue that Plaintiff's claims for breach of fiduciary duty–Counts XI and XII–should be dismissed because no Defendant owed Plaintiff a fiduciary duty. (*Id.* at 20.) Fourth, Defendants argue that Plaintiff's cause of action for unjust enrichment fails to state a

3

claim, and fails as a matter of law.  (*Id*. at 23.)  Finally, MassMutual argues that Plaintiff's claims

of negligent supervision (Counts IX and X) fail to state a claim upon which relief can be granted,

as MassMutual was not obligated to supervise Fishman.  (*Id*. at 19.)

### A.       Breach of Contract Claim

Plaintiff's core claim against the Defendants arises out of the alleged breach of the Career

Contract.  Specifically, Plaintiff alleges that Fishman's actions resulted in the diminution of

Plaintiff's income, including monies that were owed to him under the terms of the Career

Contract.  (Am. Compl. ¶¶ 137-151.)  Plaintiff, in setting out a detailed timeline of Fishman's

actions and communications, coupled with his own communications indicating the urgency of the

matter, has offered sufficient facts to "'raise a reasonable expectation that discovery will reveal

evidence of the necessary elements.'"  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at

556).  Therefore, Plaintiff's claim against Fishman for breach of contract will not be dismissed.

Plaintiff's breach of contract claim against MassMutual, however, will be dismissed.

MassMutual is not a party to the Career Contract.  "'It is fundamental contract law that one

cannot be liable for a breach of contract unless one is a party to that contract.'"  *Goldstein v.*

*Bison Bede Ltd.*, No. 09-826, 2009 WL 2710235, at *3 (E.D. Pa. Aug. 27, 2009) (quoting

*Electron Energy Corp. v. Short*, 597 A.2d 175 (Pa Super. Ct. 1991)).

MassMutual's formal contractual relationship with Plaintiff is limited to an agreement "in

case of termination of General Agent's contract."  (MassMutual Mot. to Dismiss, Ex. A at 4.)[3]

---

[3] At the motion to dismiss stage, the Court may, in its discretion, consider materials
outside of the pleadings.  *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 559 (3d Cir.
2002) ("Generally speaking, a trial court has discretion to address evidence outside the complaint
when ruling on a motion to dismiss.").

The matters addressed in that agreement are not relevant to the present case, and we cannot impose on MassMutual contractual obligations to which it is not a party.  The Career Contract represents an agreement between Plaintiff and a General Agent.  MassMutual is not directly implicated by the Contract, and therefore it cannot be held liable for breaching it.

Plaintiff has met the threshold requirements in his Amended Complaint, insofar as he has demonstrated plausible grounds for relief against Fishman and First Financial.  Therefore, Defendants' Motions to dismiss Plaintiff's breach of contract claim are denied as to all Defendants except MassMutual, and are granted as to MassMutual.

### B.    Gist of the Action Doctrine

Defendants argue that eight of the fourteen counts on which Plaintiff seeks relief should be dismissed because they are tort claims based on a contractual duty.  (MassMutual Mot. 10.)  In support of their argument, Defendants cite the "gist of the action doctrine," which "'precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.'"  *Pediatrix Screening, Inc. v. Telechem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super Ct. 2002)).  Our diversity jurisdiction mandates that we follow the substantive law of Pennsylvania on this issue.[4]

---

[4] Fishman, in support of his motion to dismiss, seeks dismissal of several counts based on Pennsylvania's "economic-loss rule." (Fishman Mot. to Dismiss at 3-4.)  This rule, which shares the overarching purpose of the gist of the action doctrine and is often discussed alongside it, "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows from a contract.'" *Factory Mkt., Inc. v. Schuller Int'l Inc.*, 987 F. Supp. 387, 395 (E.D. Pa. 1997) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  It is not clear that the economic-loss rule, which originated to address product liability cases, is suited to the case at hand.  *See  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001); *see also Hopsicomm Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d at 583 n.4 (E.D. Pa. 2004).  Furthermore, Plaintiff does seek relief for non-economic damages.

Pennsylvania's gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than tort." *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, at *8 (E.D. Pa. May 2, 2000).  Although the Pennsylvania Supreme Court has not formally adopted the gist of the action doctrine, the Pennsylvania Superior Court has "operated under the assumption that the gist of the action doctrine is a viable doctrine . . . ." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).  The Third Circuit has "embraced that view as well." *Pediatrix Screening,* 602 F.3d at 548; *see also Bohler-Uddeholm*, 247 F.3d at 103-04.

The gist of the action doctrine exists to maintain "'the separate spheres of the law of contract and tort.'" *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 402 (E.D. Pa. 2002) (quoting *First Republic Bank v. Brand*, 50 Pa. D. & C. 4th 329 (Pa. Com. Pl. 2000)).  "'Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.'" *Hopsicomm*, 338 F. Supp. 2d at 583 (quoting *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 582 (Pa. Super. Ct. 2003) (citation omitted)); *see also Bohler-Uddeholm*, 247 F.3d at 104.  In furtherance of this aim, a matter which is rooted in a contractual dispute cannot be resolved under tort law.  The doctrine bars recovery in tort, even if a plaintiff alleges that the breach was the result of negligent or intentional behavior.  *See Factory Mkt.,* 987 F. Supp. at 394 (E.D. Pa. 1997); *Phico Ins. Co. v. Presbyterian Med. Serv. Corp.*, 663 A.2d 753, 757 (Pa. Super. Ct. 1995).  The only exception to this rule is where the contract is collateral to primarily tortious conduct.  *See Quorum Health Res., Inc. v. Carbon-Schuylkill Cmty. Hosp. Inc.*, 49 F. Supp. 2d 430, 432 (E.D. Pa. 1999); *Cortez*, 2000 WL

6

536666, at * 8.

The gist of the action in this case is emphatically contractual. Plaintiff claims that under the Career Contract, Defendants "had a duty to permit Plaintiff to perform his job duties and to compensate Plaintiff accordingly and not withhold monies rightfully earned by Plaintiff as an Agent." (Am. Compl. ¶ 159.) The alleged violation of this contractual duty constitutes the nucleus of Plaintiff's claim in Count I. Therefore, the gist of the action doctrine will bar claims that (1) arise "solely from the contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from the contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010) (internal quotation omitted).

Here, Counts V and VI are barred because "[t]he duties allegedly breached were created and grounded in the contract itself." *Werner Kammann Maschinefabrik, GmbH v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 WL 126634, at * 6 (E.D. Pa. Jan. 31, 2002). Count V, alleging negligence, speaks of a "duty of reasonable care" that several Defendants had breached related to the transfer of Plaintiff's book of business. (Am. Compl. ¶¶ 185-186.) And, Count VI (negligent infliction of emotional distress) also mentions "contractual or fiduciary duties" owed to Plaintiff. (*Id.* at ¶ 190.) Given the facts set out in the Amended Complaint, the duties to which Plaintiff refers could derive only from the Career Contract. Accordingly, those claims are barred.

In addition, Counts IV and VII are barred because they are duplicative and are based on the same conduct as the breach of contract claim. *See Cortez*, 2000 WL 536666, at *8-9 (barring

7

claims arising from same conduct that breach of contract was based on).  Here, Count IV (intentional infliction of emotional distress) points to the same actions–"depriving Plaintiff of his book of business, and his commissions and income streams to which he was entitled"–as does the breach of contract claim.   (Am. Compl. ¶ 179.)  Count VII (conversion) is also indistinguishable in substance from Count I, in that it alleges that the Defendants deprived Plaintiff of commissions to which he was "entitled," presumably under the Career Contract.  (*Id.* at ¶¶ 197-200.)  All of these claims are duplicitive of the breach of contract claim and do no more than attempt to recover in tort for what should be recovered in contract.

We note that "caution should be exercised in determining the gist of an action at the motion to dismiss stage." *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000).  There is no reason to believe, however, that further discovery will lend more credibility to the notion that these tort claims are independent and the Career Contract was merely collateral.  The gist of the action in this case centers on whether Defendants breached duties encapsulated, either expressly or impliedly, in the Career Contract. Since Plaintiff's tort claims are rooted in the same set of circumstances as the breach of contract claim alleged in Count I, Counts IV, V, VI, and VII are barred by the gist of the action doctrine, and they will be dismissed as to Fishman and First Financial.  In addition, Plaintiff cannot hold MassMutual vicariously liable on theses counts.

Notably, we did not dismiss Plaintiff's claims for tortious interference with contractual relations and prospective contractual relations (Counts II and III) based upon the gist of the action doctrine.  Those claims are unique.  Although those claims are closely related to the breach of contract claim, they are not interdependent.  *See IPEG, Inc. v. Hamilton Avtec, Inc.*,

8

No. 11-574, 2011 WL 4056119, at *6-7 (M.D. Pa. Sept. 13, 2011); *Med. Mktg. Consultants, LLC v. Cardiac Telecom Corp.*, No. 06-274, 2007 WL 1811155, at *2-3 (W.D. Pa. May 31, 2007), *report and recommendation adopted*, No. 06-00274, 2007 WL 2027609 (W.D. Pa. June 20, 2007).  Rather, the toritous interference claims here rely on a contractual relationship between Plaintiff and his third party clients, and can be proved without reliance on the Career Contract. *Cola*, 745 F. Supp. 2d at 621 ("A tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it."). Plaintiff has adequately pled facts to support his tortious interference claims.  Plaintiff claims he had contracts and likely prospective contracts with clients.  Then, according to Plaintiff, after he began working for Cowan Financial and was no longer working under the Career Contract, Fishman and First Financial, without privilege or justification, intentionally interfered with Plaintiff's contracts by telling clients that Plaintiff no longer worked for MassMutual.  (Am. Compl. ¶¶ 114, 117-19.)  Plaintiff also claims damages from the alleged interference.  Such actions by Fishman and First Financial, if they occurred, could plausibly support tortious interference claims.  Therefore, Counts II and III will not be dismissed.

Because Plaintiff has adequately pled a claim for tortious interference, it would be premature for us to dismiss Plaintiff's unfair competition claim (Count VIII).  Unfair competition can be based on tortious interference.  *Synthes (USA) v. Globus Med., Inc.*, No. 04-1235, 2007 WL 2043184, at *9 (E.D. Pa. July 12, 2007) ("Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of . . . tortious interference with contract . . . .") Because Plaintiff's tortious interference claims will go forward, it is conceivable that Plaintiff will be able to use the tortious interference claims as a basis to

prove his unfair competition claim against Fishman or First Financial.  Thus, Count VIII will not be dismissed.

### C.        Counts II, III, IV, V, VI, VII, and VIII Against MassMutual

Because MassMutual was not a party to the Career Contract, the gist of the action doctrine does not bar tortious claims brought against it directly.  *See ClubCom, Inc. v. Captive Media, Inc.*, No. 02-1462, 2009 WL 249446, at *11 (E.D. Pa. Jan. 31, 2009).  Still, Counts II, III, IV, V, VI, VII, and VIII will be dismissed as to MassMutual because, for each of those claims, Plaintiff has failed to plead facts to plausibly support a claim to relief.

This matter involves a dispute centered primarily around Plaintiff and Fishman, President and CEO of First Financial.  MassMutual did not became involved in the conflict until after Plaintiff had left First Financial and joined Cowan Financial.  According to the Amended Complaint, MassMutual's involvement was relatively limited.  After heated emails were exchanged between Fishman and Plaintiff, MassMutual asked that the parties stop sending e-mails to each other and suggested that the parties work out a solution with MassMutual's help. (Am. Compl. ¶ 74.)  Plaintiff then spoke with MassMutual executives about the situation and informed them that  Fishman sided with Plaintiff's former wife during the divorce proceedings. (*Id.* at ¶¶ 76-77.)  MassMutual did not find that significant, but continued to work with the parties to find a solution.  (*See id.* at ¶ 77-78, 84.)  MassMutual then closed the matter after Cowan Financial agreed to pay a nominal amount for Plaintiff's book of business to be transferred from First Financial to Cowan Financial.  (*Id.* at ¶ 88.)  On May 6, 2008, Edward Ranck, a MassMutual Relationship Manager, began transferring Plaintiffs book of business from First Financial to Cowan Financial.  (*Id.* at ¶ 92.)  Ranck kept Plaintiff apprised of what would be

10

transferred and the status of the transfer.  (*Id.* at ¶¶ 106, 110.)  Ranck expressed that he had no

discretion over what business would or would not be transferred and that Plaintiff should address

such questions to his General Agent at Cowan Financial.  (*Id.* at ¶¶ 95-96.)  According to Ranck,

everything in Plaintiff's book of business was transferred intact.  (*Id.* at ¶ 123.)  Plaintiff does not

agree with Rank and alleges that Fishman altered client records to the detriment of Plaintiff.  (*Id.*

at ¶¶ 127-28.)  Plaintiff has not alleged any other significant facts related to MassMutual.

Taking all the above facts as true, Plaintiff has not plausibly established that MassMutual

intentionally harmed Plaintiff.  No facts support, or even suggest, that MassMutual intentionally

interfered with contractual relations or prospective contractual relations that Plaintiff had with

clients to support Counts II and III.  Similarly, Plaintiff has not alleged any outrageous conduct

by MassMutual that could conceivably support a claim for intentional infliction of emotional

distress (Count IV).  *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) ("Liability on an

intentional infliction of emotional distress claim has been found only where the conduct has been

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")

(internal quotation marks omitted).  Plaintiff has also not alleged facts to support a theory that

MassMutual intentionally interfered with Plaintiff's personal property so as to support a

conversion claim (Count VII).   Although MassMutual was involved in the transfer of Plaintiff

book of business, no facts pled by Plaintiff suggest that MassMutual was intentionally

withholding commissions from Plaintiff.  Because all of these intentional torts fail for lack of

factual support, Plaintiff's claim for unfair competition (Count VIII), which requires evidence of

tortious conduct such as tortious interference with contractual relations, also fails.

Plaintiff's claim for negligence (Count V) and negligent infliction of emotional distress (Count VI) face similar fates. To state a claim for negligence under Pennsylvania law, Plaintiff must allege that MassMutual owed it a duty or obligation that is recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks. *Hicks v. Arthur*, 843 F. Supp. 949, 958 (E.D. Pa. 1994). "If the law does not impose a duty on defendants to act under a certain set of circumstances, a claim for negligence will not survive." *Emerson v. Adult Cmty. Total Servs., Inc.*, 842 F. Supp. 152, 155 (E.D. Pa. 1994). Duties can arise from common law, by statute, and by contract. *Id.* Plaintiff bases its negligence claim on two alleged "duties" that MassMutual owed Plaintiff. First, Plaintiff claims that MassMutual had a duty to exercise reasonable care in connection with the transfer of Plaintiff's book of business from First Financial to Cowan Financial. (Am. Compl. ¶ 185.) Second, Plaintiff claims that MassMutual had a duty to prevent Fishman from stealing the clients of another agent. (*Id.*) Plaintiff offers nothing to support the assertion that either of these "duties" are recognized in common law or in statute. Furthermore, the duties cannot be based in the Career Contract, as MassMutual was not a party to the contract. In addition, Plaintiff has not alleged that it has the special relationship with MassMutual such that MassMutual had a duty to protect Plaintiff from the conduct of Fishman. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. Ct. 2000) ("Under common law there is no duty to control the conduct of a third party to protect another from harm, except where a defendant stands in some special relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct, which gives the intended victim a right to protection."). Thus, Plaintiff has not established that the law imposed a duty on MassMutual that would

12

support a negligence claim under these circumstances.

The same is true for Plaintiff's claim of negligent infliction of emotional distress.  The cause of action for negligent infliction of emotional distress is restricted to the following four factual circumstances:  "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."  *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008), *order aff'd by equally divided court*, 36 A.3d 83 (Pa. 2011). Plaintiff's claim is based on number one, and in the alternative, number two.  (Am. Compl. ¶¶ 190-91.)   However, neither one or two is sufficiently supported by factual allegations to allow the claim to survive the motion to dismiss stage.  In circumstance one, Plaintiff must establish that MassMutual owed a duty to Plaintiff that arises from an existing "special relationship" that "encompass[es] an implied duty to care for the plaintiff's emotional well being."  *Weiley v. Albert Einstein Med. Cntr.*, 51 A.3d 202, 218 (Pa. Super. Ct. 2012) (quoting *Toney v. Chester Cnty. Hosp.*, 36 A.2d 83, 95 (Pa. 2011) (opinion in support of affirmance)); *see Okane v. Tropicana Entm't, Inc.*, No. 12-6707, 2013 WL 56088, at *2 (E.D. Pa. Jan. 3, 2013).  Plaintiff has alleged no such duty.  MassMutual was not a party to the Career Contract, and, as we discuss in further detail below, no fiduciary relationship existed between MassMutual and Plaintiff. Thus, number one fails.  Likewise, Plaintiff has failed to establish that he suffered a "physical impact" as required to support a claim under number two.  Although Plaintiff has alleged a "physical injury," he has not alleged a "physical impact."  *See Schmidt v. Boardman Co.*, 11 A.3d 924, 366-67 (Pa. 2011) (explaining that physical impact and physical injury are not synonymous

terms and the traditional impact rule allowed recovery of emotional distress damages only when the trauma derived from a contemporaneous physical impact).  Accordingly, Plaintiff has not established any plausible basis for recovery on the theory of negligent infliction of emotional distress.

### D.  Civil Conspiracy

For Plaintiff to successfully plead a claim for civil conspiracy, he must sufficiently allege the following elements:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) (citations omitted).  In addition, "[a] claim for civil conspiracy requires proof of a separate underlying tort as a predicate for the conspiracy." *Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 281 F. Supp. 2d 784, 786 (E.D. Pa. 2003).  Here, the only possible predicate torts are those that are not dismissed:  tortious interference with contractual or prospective contractual relations and unfair competition.  While a civil conspiracy claim may be based on these torts, Plaintiff's claim fails because he has not alleged that two or more persons conspired to commit those torts.  As discussed above, the Amended Complaint does not allege that MassMutual was involved in any tortious interference or unfair competition.  The limited facts that Plaintiff has alleged related to the predicate torts implicate only Fishman and First Financial, and Fishman, as President and CEO of First Financial, cannot conspire with First Financial.  *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006) (internal quotations omitted) ("A single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves.").  Plaintiff has not alleged that any other person or entity

14

conspired with Fishman or First Financial in committing the underlying torts.  Therefore,

Plaintiff's claim for civil conspiracy must be dismissed against all Defendants.

### E.      Breach of Fiduciary Duty Claims

Defendants argue that Plaintiff's claim against Fishman for breach of fiduciary duty

(Count XI) should be dismissed because no fiduciary relationship existed between Plaintiff and

Fishman.  (MassMutual Mot. to Dismiss 20.)  Defendants further argue that Plaintiff's claim for

aiding and abetting such a breach (Count XII) should be dismissed.  (*Id*. at 21.)

Under Pennsylvania law, the existence of a business relationship does not imply an

attendant fiduciary relationship.  A confidential or fiduciary relationship exists if "one person has

reposed a special confidence in another to the extent that the parties do not deal with each other on

equal terms . . . ."  *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 842 (E.D. Pa.

1993) (quoting *Commw., Dept. of Transp. v. E-Z Parks*, 620 A.2d 712, 717 (Pa. Commw. Ct.

1993)).  In the business context, a confidential relationship is formed "only if one party surrenders

substantial control over some portion of his affairs to the other."  *Siematic Mobelwerke GmbH &*

*Co. KG v. Siematic Corp.*, No. 06-5165, 2009 WL 2526436, at *4 (E.D. Pa. Aug. 12, 2009)

(quoting *In re Scott's Estate*, 316 A.2d 883, 886 (Pa. 1974)).  A business relationship between two

parties to a commercial contract dealing at arms length does not create a "special relationship"

under Pennsylvania law.  *Freedom Props., L.P. v. Lansdale Warehouse Co., Inc.*, No. 06-5469,

2007 WL 2254422, at *6 (E.D. Pa. Aug. 2, 2007).  Indeed, there is a "crucial distinction" between

surrendering control of one's affairs to a fiduciary and an ordinary commercial agreement,

"however important [the agreement's] performance may be to the success of one's business."

*Valley Forge Convention & Visitors Bureau v. Visitor's Serv., Inc.*, 28 F. Supp. 2d 947, 953 (E.D.

Pa. 1998).

The relationship between Plaintiff and Fishman is rooted in an ordinary commercial agreement between two parties dealing at arms length.  Although Plaintiff states that he and Fishman "did not deal on equal terms" (Am. Compl. ¶ 222), any such inequality does not rise to the level of surrendering control over Plaintiff's affairs.  Even if Plaintiff "depended on and trusted Fishman" (Am. Compl. ¶ 223), this informal dependence and trust did not create a confidential or fiduciary relationship.  Because the facts do not adequately allege the existence of a fiduciary relationship between Plaintiff and Fishman or MassMutual, and no fiduciary duty was owed by any Defendant to Plaintiff, Counts XI and XII will be dismissed.

### F.    Unjust Enrichment

Plaintiff, in Count XIV, alleges quantum meruit against Defendants.  The Pennsylvania Supreme Court has held that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (quoting *Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).  This principle is well-established under Pennsylvania law and traditional contract law principles.  *See Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 620 (E.D. Pa. 2003).  In this case, the formal relationship between the Plaintiff and Fishman is clearly predicated on the Career Contract.  As such, Plaintiff is ineligible to recover for unjust enrichment.  Since Plaintiff cannot state a claim for quantum meruit, Count XIV will be dismissed.

G.      **Negligent Supervision Claims**

Plaintiff alleges that MassMutual failed to properly supervise Fishman (Count IX) and officials at MassMutual's Home Office in Massachussetts (Count X), and in so doing, MassMutual violated a duty of care it owed Plaintiff.

Plaintiff fails to allege sufficient facts to preserve his claims under Counts IX and X.  In his filings, Plaintiff does not demonstrate that MassMutual bore any duty to supervise Fishman's activities; indeed, it appears that Fishman is an independent contractor.  (MassMutual Mot. to Dismiss Ex. B ¶ 11.)  MassMutual is not obligated to supervise an independent contractor's activities.  *See Ernst v. Ford Motor Co.*, No. 92-1620, 1993 WL 437714, at *5 (E.D. Pa. Oct. 22, 1993).  In addition, Plaintiff offers no factual basis for his claim that MassMutual failed to supervise the activities of individuals at its home office in Springfield, Massachusetts. There is little in the record to suggest that these claims against MassMutual are plausible.  Because Plaintiff has not offered "sufficient factual matter" to "'state a claim to relief that is plausible on its face,'" Counts IX and X will be dismissed.  *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motions will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*/s/ R. BARCLAY SURRICK, J.*

17