IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS K. KARPF | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 10-1401 |
| MASSACHUSETTS MUTUAL LIFE | : |
| INSURANCE COMPANY, ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                           FEBRUARY 5, 2019

Presently before the Court is Defendant's Amended Motion in Limine (ECF No. 98). For the following reasons, Defendants' Motion will be granted in part and denied in part.

**I.    BACKGROUND**

This action arises from a business dispute that ensued when an insurance agent with a substantial book of business transferred from one insurance agency to another. Plaintiff Douglas Karpf sold insurance policies for Massachusetts Mutual Life Insurance Company ("MassMutual") for nearly three decades. During the time period relevant to this dispute, Plaintiff was a full-time agent with Defendant First Financial Group ("First Financial"), a MassMutual general agency operated by Defendant Harris S. Fishman ("Fishman"), Mass Mutual's general agent for the territory comprising Pennsylvania, New Jersey and Delaware. In 2008, Karpf left Fishman and First Financial and went to a new general agent, Howard Cowan, and his agency, Cowan Financial Group. Plaintiff alleges that in connection with his departure from First Financial, Defendants delayed the transfer of his clients to his new agency, improperly re-assigned many of his clients to other agents at First Financial, and took other steps to interfere

with and destroy his business.[1] (*See generally,* Am. Compl., ECF No. 58.) Based on our rulings on dispositive motions, Plaintiff's surviving claims allege breach of contract (Count 1), tortious interference with prospective contractual relations (Count 3), and unfair competition (Count 8) against Defendants Fishman and First Financial. With regard to the tortious interference claim, Plaintiff seeks to recover emotional distress damages in addition to the commissions and other compensation he allegedly lost as a result of Defendants' actions. Trial in this matter is scheduled to begin February 11, 2019.

## II. LEGAL STANDARD

### A. The Federal Rules of Evidence

Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible, and relevant evidence is admissible unless otherwise provided by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Even if evidence is otherwise relevant and admissible, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Similarly, Rule 701 requires that lay opinion testimony be "rationally based on the witness's perception." Fed. R. Evid. 701.

---

[1] A more detailed recitation of the factual background and procedural history is set forth in our Memorandum and Order issued February 28, 2018, granting in part and denying in part Defendants' Motion for Summary Judgment. (SJ Mem. Op., ECF. No. 83; SJ Order, ECF No. 84.)

2

Federal Rule of Evidence 702 governs the admissibility of testimony by experts. Fed. R. Evid. 702. As the Supreme Court noted in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). In order to address the concerns raised by the Supreme Court in *Daubert*, the Rule contains a "trilogy" of requirements: "qualification, reliability and fit." *Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The trial judge serves as a gatekeeper who ensures that the trilogy of requirements is satisfied—"that any and all expert testimony or evidence is not only relevant but also reliable." *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 805 (3d Cir.1997) (citing *Daubert*, 509 U.S. at 589). "Qualification refers to the requirement that the witness possess specialized expertise." *Estate of Schneider*, 320 F.3d at 404. This requirement has been interpreted liberally, and "a broad range of knowledge, skills, and training" may qualify someone as an expert. *Id.* The reliability element requires that the testimony "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; and the expert must have good grounds for his or her opinion." *Id.* (internal quotations and citations omitted). To satisfy the fit requirement, "testimony must be relevant for the purposes of the case and must assist the trier of fact." (*Id.*)

B.  **Motion in Limine Standards**

"The purpose of a motion in limine is to bar 'irrelevant, inadmissible, and prejudicial' issues from being introduced at trial, thus 'narrow[ing] the evidentiary issues for trial[.]'" *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (quoting *Laufen Int'l, Inc. v. Larry J. Lint Floor & Wall Covering*, Co., No. 10–199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012)). A court may exercise its discretion to rule *in limine* on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d

3

Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). However, "[t]he trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). "The moving party bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.'" *Apotex, Inc. v. Cephalon, Inc.*, No. 06-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) (quoting *Leonard*, 981 F. Supp. 2d at 276. "Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard*, 981 F. Supp. 2d at 276.

## III. DISCUSSION

Defendants seeks to preclude Plaintiff from presenting the following categories of evidence at trial: (1) vague, general, and unsupported testimony regarding renewal business he allegedly lost in support of his breach of contract claim; (2) vague, general, and unsupported testimony that Defendants interfered with his prospective contractual relations; (3) testimony that Defendants tortiously interfered with a prospective contractual relationship between Plaintiff and Massachusetts Life Insurance Company ("MassMutual"); (4) Plaintiff's damages expert report and testimony to the extent they are based upon vague, unsupported assertions of lost business and commissions; (5) testimony not based on personal knowledge about Fishman's role in the allegedly improper and incomplete transfer of Plaintiff's business; (6) evidence relating to unpaid first-year commissions; (7) evidence regarding a "eggshell skull" theory with regard to Plaintiff's alleged mental or emotional injuries; and (8) hearsay evidence of statements by

4

Plaintiff's clients to Plaintiff or his assistant reporting that Defendants or their agents allegedly told the clients that Plaintiff was "no longer with the company."

### A. Vague, Unsupported Testimony By Plaintiff (Issues 1, 2, and 5)

With regard to Plaintiff's testimony, Defendants anticipate that he may offer broad and vague assertions about Defendants' conduct and his losses that are not based on personal knowledge and that fail to specify the business lost, quantify the loss, or explain how Defendants caused it. Such testimony, Defendants argue, is insufficient to establish damages with the requisite reasonable certainty or to establish the reasonable likelihood of any prospective business relations Plantiff allegedly lost. Defendants further argue that the probative value, if any, of such testimony is substantially outweighed by the danger of unfair prejudice to the Defendants. Defendants argue that the challenged testimony should be precluded under Federal Rule of Evidence 403 and, to the extent it is not based on personal knowledge, precluded under Rule 602.

In his deposition, Plaintiff testified that he lost clients and renewal commissions as a result of Defendants' alleged wrongful conduct in connection with his transfer from First Financial. (*See, e.g.*, Karpf Dep. 102-05, 109-11, 126-28, 149-53, 157-60, 176-86, Defs.' SJ Br. Ex. 2, ECF No. 76-1.) Plaintiff identified several specific examples of clients he alleges were improperly transferred, (*see, e.g., id.* at 128, 153, 178, 180-83), and he also referred generally to reports and other documentation of the business and commissions he claims to have lost, (*see, e.g., id.* at 102-04, 127-28, 146-61, 180-86). The summary judgment record also included evidence from which a factfinder could infer that Defendants, and Fishman in particular, acted improperly with respect to the transfer of Plaintiff's business. (SJ. Mem. Op. 13-21, 36-37.) We found this evidence sufficient to withstand summary judgment.

5

However, in order to prevail at trial, Plaintiff must present competent testimony and other evidence in accordance with the Rules. To establish damages, Plaintiff "must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003) (quoting *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 668 (3d Cir. 1998)). Similarly, in order to prove his claim for tortious interference with prospective contractual relations, Plaintiff must establish a reasonable likelihood or probability the prospective relation was likely to occur. *See, e.g., Glenn v. Point Park Coll.*, 272 A.2d 895, 898-99 (Pa. 1971).

At trial, Plaintiff will be precluded from offering factual or lay opinion testimony that is not based on personal or first-hand knowledge or other proper evidentiary foundation. Plaintiff must present specific testimony based on personal knowledge and/or other evidence with proper foundation to support his claims and establish resultant damages with reasonable certainty. He will not be permitted to offer unfounded speculation and opinion. At this stage of the proceedings, however, the Court cannot further determine what testimony or evidence Plaintiff will seek to introduce, or whether such evidence will be based on the necessary personal knowledge or foundation. As such, we will defer further ruling on admissibility of Plaintiff's testimony until the time of trial. If Plaintiff offers testimony or other evidence that Defendants consider inadmissible, Defendants may assert their objection at that time, at which point the Court can better evaluate the probative value and potential prejudice of the evidence in light of its content and purpose.

### B. Evidence of Alleged Interference Involving MassMutual (Issue 3)

The Court previously dismissed Plaintiff's claims against MassMutual, including the claim for tortious interference with prospective contractual relations. (ECF Nos. 56, 57.)

6

Accordingly, evidence of alleged interference by MassMutual with Plaintiff's prospective contractual relations is not relevant. However, the Court's prior ruling does not preclude Plaintiff from offering evidence that Defendants' alleged conduct directed at MassMutual interfered with Plaintiff's prospective economic relationships with MassMutual policyholders through which Plaintiff would otherwise have earned commissions or other pecuniary benefits. (*See* SJ Mem. Op. 36-37, ECF No. 83 (finding sufficient evidence at summary judgment that "Plaintiff had . . . prospective business relationships with his clients . . . by virtue of which he reasonably expected pecuniary benefits in the form of commissions and incentive compensation he earned by selling MassMutual insurance policies and policy renewals to his clients.").)

### C.  The Opinions and Testimony of Plaintiff's Damages Expert (Issue 4)

Defendants argue that the expert report and opinions of Plaintiff's damages expert, Andrew C. Verzilli, should be precluded to the extent they are based on vague and unsupported assertions regarding the renewal commissions and prospective new business Plaintiff allegedly lost. Review of Verzilli's Report and Supplemental Report reveals that his analysis is based on the assumption that Plaintiff lost virtually all of his income and future earning capacity and was declared disabled as a result of the termination of his employment with First Financial. (*See* Verzilli 3/20/15 Rept. 3; 8/8/18 Suppl. Report, ECF No. 104.) Based on this assumption and Plaintiff's past earnings, Verzilli projects Plaintiff's earning forward for approximately 17 years and opines that his past lost earnings and future lost earning capacity total approximately $2.8 million.

Under Pennsylvania law, "loss of future earnings, if proven, is properly included in a damage award." *Helpin v. Trustees of Univ. of Pa.*, 10 A.3d 267, 270 (Pa. 2010) (citing *Robertson v. Atlantic Richfield Prods. Co.*, 537 A.2d 814, 823 (Pa. 1987).) However, "[t]he law

7

does not permit a damages award to be based on mere guesswork or speculation, but rather requires a reasonable basis to support such an award." *Id.* (citations omitted); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000) ("Although mathematical exactness is not required, [expert] testimony of post-injury earning capacity must be based upon the proper factual foundation"). As the court explained in *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. 97-652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998):

> The requirement of a reasonable factual basis for an expert's testimony arises from Rules 702 and 703. If an expert's testimony is not based on admissible evidence, Rule 703 requires that the expert base their opinion on data that is "reasonably relied upon by experts in the particular field." Fed.R.Evid. 703.
>
> Rule 702 states that expert testimony is only admissible if it "will assist the trier of fact." Fed.R.Evid. 702. Expert testimony that is based on speculation or unrealistic assumptions is not helpful.

*JMJ Enters.*, 1998 WL 175888, at *6. "Federal courts applying the standards established by Rule[s] 702 and 703 have permitted damages experts to make the assumptions necessary to render a sound opinion, so long as such assumptions have a reasonable basis in the factual record." *Brill v. Marandola*, 540 F. Supp. 3d 563, 568 (E.D. Pa. 2008) In addition, experts are permitted to rely on information provided by the party who hired them, and "experts are not required to 'eschew reliance on a [party's] account of factual events that the experts themselves did not observe.'" *Brill v. Marandola*, 540 F. Supp. 3d 563, 568 (E.D. Pa. 2008) (quoting *Tormenia v. First Investors Realty Co.*, 251 F.3d 128, 135 (3d Cir. 2000). "That said, an expert's testimony nonetheless 'must have some connection to existing facts,' and 'expert testimony that ignores existing data and is based on speculation is inadmissible.'" *Id.* (quoting *JMJ Enters.*, 1998 WL 175888, at *6.)

As noted above, we cannot determine at this juncture what evidence of damages Plaintiff will present at trial, or whether Verzilli's opinions and underlying assumptions will be

8

plausible and not speculative in light of that evidence. Accordingly, we will grant Defendants' Motion insofar as Verzilli's analysis and opinions will not be admitted unless and until there is sufficient factual basis in the trial record to support their admissibility under Rules 702 and 703.

### D. Evidence Regarding Alleged Unpaid First-year Commissions (Issue 6)

In our ruling on Defendants' summary judgment motion, we determined that the record was devoid of "any evidence that would permit a reasonable fact finder to conclude that Plaintiff was denied rightfully earned first-year commissions." Moreover, it is undisputed that Plaintiff has not worked or written any new policies since 2009. (Karpf Dep. 187-88, 193.) Accordingly, and as we previously held, "Plaintiff's breach of contract claim cannot rest on the failure to provide first-year commissions." (SJ Mem. Op. 14.) As such, evidence regarding any loss of such commissions is not relevant and will not be admitted at trial.

### E. "Eggshell Skull" Theory As To Mental or Emotional Injuries (Issue 7)

Defendants seek to preclude Plaintiff from relying upon an "eggshell skull" theory that his pre-existing psychiatric condition made him particularly vulnerable to emotional distress and renders Defendants' liable for aggravation of his pre-existing mental condition. Defendants contend that, under Pennsylvania law, the "eggshell skull" doctrine does not apply to pre-existing mental or emotional conditions.

The "eggshell skull" rule refers to the principle that "a tortfeasor must take his victim as he finds him, and consequently, the tortfeasor is liable for the full extent of the injury that his conduct has caused." *Meyer v. Union R. Co.*, 865 A.2d 857, 863 (Pa. Super. Ct. 2004). This principle is reflected in the Restatement (Second) of Torts § 461, which states:

> § 461 Harm Increased in Extent by Other's Unforeseeable *Physical Condition*
>
> The negligent actor is subject to liability for harm to another although a *physical condition* of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should

9

have foreseen as a probable result of his conduct.

Restatement (Second) of Torts § 461 (1965) (emphasis added). The "eggshell skull" rule, as framed in the Restatement (Second) of Torts, is well established in Pennsylvania law. *See Pavorsky v. Engels*, 188 A.2d 731, 733 (Pa. 1963) (citing *Offensend v. Atl. Ref. Co.*, 185 A. 745, 746–47 (Pa. 1936)).

However, the application of the "eggshell skull" rule in Pennsylvania has been limited to plaintiffs who suffer physical injuries or have a pre-existing physical condition. *See, e.g., Botek v. Mine Safety Appliance Corp.*, 611 A.2d 1174, 1177 (Pa. 1992) (holding that plaintiff who suffered "objective, measurable, observable physical injuries" could recover for resulting "psychological and emotional pain and suffering"); *Pavorsky*, 188 A.2d at 733 (applying rule where victim had a pre-existing herniated disc); *Cingota v. Milliken*, 428 A.2d 600, 602 (Pa. Super. Ct. 1981) (involving pre-existing back condition); *Fretts v. Pavetti*, 422 A.2d 881, 885 (Pa. Super. Ct. 1980) (involving pre-existing physical condition). Our conclusion in this regard is consistent with the Pennsylvania Standard Jury Instruction on the "eggshell skull" rule, which appears limited to pre-existing physical conditions or injuries. Pa. SSJI (CIV), 7.70. That instruction states:

> Damages should be awarded for all injuries caused by the [accident] [occurrence] even if:
>
> 1. the injuries caused by the [accident] [occurrence] were more severe than could have been foreseen because of the plaintiff's *prior physical condition*; or
>
> 2. a *preexisting medical condition* was aggravated by the [accident] [occurrence]. If you find that the plaintiff did have a preexisting condition that was aggravated by the defendant's negligence, the defendant is responsible for any aggravation caused by the [accident] [occurrence].
>
> I remind you that the defendant can be held responsible only for those injuries or the aggravation of a prior injury or condition that you find was factually caused by the [accident] [occurrence].

10

*Id.* (emphasis added).

Finally, we are not aware of any Pennsylvania court that has adopted or cited to the "eggshell skull" formulation of the Restatement (Third) of Torts § 31. That section, unlike the corresponding provision in the Restatement (Second), expressly includes preexisting mental conditions and states:

> When an actor's tortious conduct causes harm to a person that, because of a *preexisting physical <u>or mental</u> condition* or other characteristics of the person, is of a greater magnitude or different type than might reasonably be expected, the actor is nevertheless subject to liability for all such harm to the person.

Restatement (Third) of Torts § 31 (2010) (emphasis added). Moreover, the comments to that provision expressly state that it "adopts and extends § 461 of the Restatement Second of Torts," which "<u>was limited to physical conditions</u>. . . ." *Id.* cmt. a.

Based on the present state of Pennsylvania law on this issue, Plaintiff will be precluded from presenting evidence in support of an "eggshell skull" theory with respect to his alleged emotional distress damages.[2]

### F. Hearsay Evidence Regarding Statements by Plaintiffs' Clients (Issue 8)

In his deposition, Plaintiff testified that after he left First Financial, Defendants or their agents told his clients who called for him that Plaintiff "was no longer with the company." (Karpf. Dep. 140-42.) Plaintiff identified two clients by name as to whom this allegedly occurred, and he testified that the clients then told him and/or his assistant about the phone calls. *Id.* Defendants seek to exclude evidence of the alleged statements to Plaintiff's clients on the

---

[2] We further note that Plaintiff's alleged emotional distress damages are compensable only with respect to his claim for tortious interference with prospective contractual relations, and only if he establishes pecuniary loss from the alleged interference. *See Pelagatti v. Cohen*, 536 A.2d 1337, 1343-44 (Pa. Super. Ct. 1987) (holding that absent pecuniary loss, a plaintiff asserting tortious interference claim cannot recover for consequential emotional harm); *see also Dreiling Millennium Trust II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 435 (E.D. Pa. 2011) (same); *Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa. Super. Ct. 1998) (same).

11

ground that they constitute inadmissible hearsay or double hearsay.

The Federal Rules of Evidence define "hearsay" as "a statement that: . . . the declarant does not make while testifying at the current trial or hearing; [which] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The "statement" can be "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). "Hearsay is not admissible [at trial] unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. Rule 802. Double or multiple hearsay is not admissible unless each part of the statements falls within an exclusion from, or exception to, the hearsay rule. *See* Fed. R. Evid. 805; *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 376 (3d Cir. 2004) (noting that when document contains several out-of-court assertions, document is not admissible unless each assertion is admissible under exclusion or exception from hearsay rule).

Plaintiff contends that evidence of the alleged statements to his clients should be admitted under the residual exception to the hearsay rule, *see* Fed. R. Evid. 807, or as excited utterances pursuant to Rule 803(2). Plaintiff further contends that the statements may be admissible, subject to a limiting instruction, as non-hearsay to the extent they are not offered for the truth of the matter asserted in the statements.

On the present record, there is no question that the statements at issue are hearsay or double hearsay, and Plaintiff has failed to establish that they are admissible under Rules 807 or 803(2) or as non-hearsay. The statements will not be admitted absent a further offer of proof by Plaintiff at trial to establish their admissibility under a hearsay exception or for a proper non-hearsay purpose.

12

## IV. CONCLUSION

For the foregoing reasons, Defendants' Amended Motion in Limine will be granted in part and denied in part as set forth in the accompanying Order.

BY THE COURT:

R. BARCLAY SURRICK, J.