IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOUGLAS K. KARPF : CIVIL ACTION
v. :
: NO. 10-1401
MASSACHUSETTS MUTUAL LIFE :
INSURANCE COMPANY, ET AL. :

MEMORANDUM

SURRICK, J.                                                                               FEBRUARY 7, 2019

Presently before the Court are Plaintiff's Motions in Limine and For Discovery. (ECF No. 97). Plaintiff's Motions seek the admission at trial of two emails marked as Exhibits P–89 and P–310. Plaintiff also seeks to preclude Defendants from introducing: (1) evidence of Plaintiff's receipt of Social Security disability and private disability insurance benefits; (2) evidence relating to text messages involving Plaintiff's post-divorce relationships and which are contained in Plaintiff's medical records; and (3) evidence regarding tax liens, debts, civil settlements, and regulatory actions against Plaintiff. Finally, Plaintiff's Motion seeks an order requiring Defendants to produce documents reflecting the revenues, profits and/or assets under management of Defendant First Financial Group ("First Financial"), and recent tax returns of Defendant Harris S. Fishman ("Fishman"). For the reasons that follow, Plaintiff's Motion will be granted in part and denied in part.

I.     BACKGROUND[1]

This action arises from a business dispute that ensued when an insurance agent with a

---

[1] The factual background and procedural history of this matter are set forth in detail in our Memorandum and Order granting in part and denying in part Defendants' Motion for Summary Judgment. (SJ Mem. Op., ECF. No. 83; SJ Order, ECF No. 84.)

substantial book of business transferred from one insurance agency to another. Plaintiff Douglas Karpf sold insurance policies for Massachusetts Mutual Life Insurance Company ("MassMutual") for nearly three decades. During the time period relevant to this dispute, Plaintiff was a full-time agent with First Financial, a MassMutual general agency operated by Fishman, MassMutual's general agent for the territory comprising Pennsylvania, New Jersey, and Delaware. In 2008, Karpf left Fishman and First Financial and went to a new general agent, Howard Cowan, and his agency, Cowan Financial Group. Plaintiff alleges that, in connection with his departure from First Financial, Defendants delayed the transfer of his clients to his new agency, improperly reassigned many of his clients to other agents at First Financial, and took other steps to interfere with and destroy his business. (*See generally* Am. Compl., ECF No. 58.) Based on our ruling on the Motion for Summary Judgment, Plaintiff's surviving claims allege breach of contract (Count 1), tortious interference with prospective contractual relations (Count 3), and unfair competition (Count 8) against Defendants Fishman and First Financial. With regard to the tortious interference claim, Plaintiff seeks to recover emotional distress damages in addition to the commissions and other compensation that he allegedly lost as a result of Defendants' actions. Trial in this matter is scheduled to begin February 11, 2019.

## II. DISCUSSION

### A. Motion in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)); *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible."). A court may exercise its

discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Where a motion in limine seeks to exclude evidence, the motion should be granted "only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406. The party seeking to exclude evidence "bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.'" *Apotex, Inc. v. Cephalon, Inc.*, No. 06-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). "Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard*, 981 F. Supp. 2d at 276 (citations omitted). "Further, a trial court's ruling on a motion in limine is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Tartaglione*, 228 F. Supp. 3d at 406 (quoting *Luce v. United States*, 469 U.S. 38, 41(1984)).

### 1. *Motion to Admit Emails*

The emails Plaintiff seeks to introduce can be summarized as follows. Exhibit P–89 is a chain of emails from June 2008 between Fishman and MassMutual executive Edward Youmell in which Youmell states to Fishman: "Gotcha—great seeing you buddy. . . thanks again for the game AND the cheese steak." (Ex. P–89, Pl.'s Mot., Ex. A.) Plaintiff surmises that this message refers to an outing the two men shared to a sports game in Philadelphia during the time when Plaintiff's business was being transferred from First Financial to his new agency. Plaintiff

3

claims that this email is relevant to show that, contemporaneous with the business transfer, "Youmell can be seen admitting to actually seeing Fishman in person," and to support an inference "that Fishman took care of the person who took care of him at the MassMutual home office." (Pl.'s Mot. at 2.) Plaintiff further posits that Youmell's statement reflects "back-channel communications" between MassMutual and Fishman, and a "recognition of an apparent favor" from Youmell to Fishman that is somehow evidence of "collusion" between Defendants and MassMutual. (*Id.* at 4.)

Exhibit P–310 is a March 27, 2008 email between Fishman and Ronald Lee of the Lee-Nolan Agency, another MassMutual general agency. (Ex. P–310, Pl.'s Mot., Ex. B.) In this email, Fishman and Lee apparently discuss Plaintiff's plans to transfer from First Financial to another agency, and they apparently refer to having discussed Karpf's plans at a prior in-person meeting. Plaintiff argues that this email "is reflective of Fishman's intent to interfere with Plaintiff's book of business," and that it also reflects Fishman's desire to have Plaintiff transfer to an agency from which Fishman might receive some benefit. (Pl.'s Mot. at 5-6.) Plaintiff further suggests that this email shows Fishman "hob-knobbing with those who can do things for him in the MassMutual family." (*Id.* at 5.)

Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible, and relevant evidence is admissible unless otherwise provided by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. However, Rule

4

403 precludes only evidence that is unfairly prejudicial, as "[v]irtually all evidence is prejudicial or it isn't material." *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)).

Plaintiff's arguments as to the purported relevance of these two exhibits are meritless. With regard to Exhibit P–89, the portion of the email chain cited by Plaintiff has no bearing on the issues to be determined in this case, to wit, whether Defendants delayed the transfer of Plaintiff's clients to his new agency, improperly reassigned his clients to other agents at First Financial, or took other steps to improperly interfere with and destroy his business. Moreover, to the extent that Youmell's statement thanking Fishman for the game and cheesesteak could be construed as supporting an inference of "collusion," such an inference is irrelevant and would be highly prejudicial because Plantiff's claim for civil conspiracy against Defendants and all of his claims against MassMutual were long ago dismissed.

With respect to Exhibit P–310, Plaintiff's relevance arguments are even more baseless. The fact that Fishman and Nolan may have discussed Plaintiff's anticipated transfer by email or in person, and the fact that Fishman may have hoped he would receive a financial benefit if Plaintiff transferred to a particular agency, have no bearing on any fact of consequence in determining this action. Plaintiff transferred to the Cowan Financial Group, and it is the evidence related to that transfer that is relevant to this case. Moreover, and as with Exhibit P–89, allowing Plaintiff to use this email to suggest a nefarious inference of conspiracy between Fishman and MassMutual or other MassMutual general agents would confuse the issues, mislead the jury, and cause unfair prejudice to Defendants.

We further note that both of the email chains that Plaintiff seeks to admit appear to contain hearsay statements. The Rules define "hearsay" as "a statement that: . . . the declarant

5

does not make while testifying at the current trial or hearing; and [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The "statement" can be "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). "Hearsay is not admissible [at trial] unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. Rule 802. As to Exhibit P–89, Plaintiff contends that Youmell's email statement is admissible under the residual exception to the hearsay rule, Fed. R. Evid. 807, or as a statement against interest pursuant to Rule 804(b)(3). Plaintiff does not address how Nolan's statement in P–310 would be admissible under the hearsay rules and exceptions. Because we have determined that these exhibits are inadmissible under Rules 402 and 403 for the purposes currently offered, we will not address their potential admissibility under the hearsay rules at this time.

Plaintiff's Motion will be denied as to Exhibits P–89 and P–310. These exhibits will not be admitted absent a further offer of proof by Plaintiff at trial to establish their relevance and admissibility. If Plaintiff makes an offer of proof, Defendants will have the opportunity to object and to request such limiting instructions as may be appropriate.

  2. *Motion to Exclude Evidence*

    (a) <u>Social Security and Private Disability Payments to Plaintiff</u>

As noted above, Plaintiff seeks to recover emotional distress damages in connection with his claim for tortious interference with prospective contractual relations. Specifically, Plaintiff contends that his emotional distress was so severe that he became unable to work at all as of approximately May 2009. Since being declared disabled, Plaintiff has collected Social Security disability and private insurance disability benefits. Plaintiff seeks to preclude Defendants from offering evidence of Plaintiff's receipt, and the amounts of, those benefits, arguing that such

6

evidence is inadmissible under Pennsylvania's collateral source rule and that it is unfairly prejudicial under Rule 403.

"[I]n Pennsylvania, '[t]he collateral source rule provides that payments from a third-party to a victim will not lower the damages that the victim may recover from a wrongdoer.'" *Witkowski v. Int'l Bhd. of Boilermakers*, 404 F. App'x 674, 677 (3d Cir. 2010) (quoting *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 442 (3d Cir. 2000)); *see also* Restatement (Second) of Torts § 920A(2) (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). As we have previously ruled, Plaintiff may be able to recover emotional distress damages with respect to his claim for tortious interference with prospective contractual relations. *See, e.g.*, Restatement (Second) of Torts § 774A(1) (1979) ("One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for (a) the pecuniary loss of the benefits of the contract or the prospective relation; . . . and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference."); *see also Pelagatti v. Cohen*, 536 A.2d 1337, 1343-44 (Pa. Super. Ct. 1987) (holding that, absent pecuniary loss, a plaintiff asserting tortious interference claim cannot recover for consequential emotional harm).

We agree that evidence of Plaintiff's disability benefits and, specifically, the amount of benefits he received, are inadmissible for the purpose of offsetting or deducting the amount of those benefits from any emotional distress damages found to have been the result of Defendants' alleged tortious conduct. However, as Defendants suggest, evidence relating to Plaintiff's application for and receipt of disability benefits may be admissible for other purposes, such as to

rebut a contention by Plaintiff that his emotional distress and total disability result entirely from Defendants' allegedly tortious conduct. *See, e.g., Coney v. NPR, Inc.*, No. 13-1324, 2006 WL 2583581, at *2 (E.D.Pa. Aug.31, 2006) ("[T]he Third Circuit has recognized that testimony of a collateral source may be permitted when offered to directly contradict a statement made by a plaintiff in court."). Accordingly, evidence of collateral benefits that Plaintiff received will not be admitted for the purpose of offset or deduction from an award for emotional distress damages found to have resulted from Defendants' alleged tortious conduct.

      (b) <u>Documents Attached as Exhibits C, D, and E to Plaintiff's Motion</u>

Finally, Plaintiff seeks to exclude the following three categories of documents that he contends are irrelevant, prejudicial, or inadmissible evidence of prior bad acts: (1) text messages Plaintiff exchanged with a woman with whom he had a relationship after his divorce; (2) documents relating to tax liens owed by Plaintiff; and (3) documents relating to regulatory mistakes, civil judgments, and settlements involving Plaintiff. (Pl.'s Mot. 10-11, Exs. C-E.) Plaintiff contends that this evidence is not relevant and, to the extent it has any relevance, should be excluded under Rule 403. Plaintiff further argues that the documents should be excluded under Rule 404(b) as prior bad acts evidence offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." (*Id.* citing Fed. R. Evid. 404(b).)[2] In response, Defendants argue that the disputed evidence is highly relevant to rebut Plaintiff's contentions regarding the source and extent of his emotional distress and, in light of that relevance, the evidence will not be unfairly prejudicial.

---

[2] Pursuant to Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

8

Having reviewed the documents at issue, and without the benefit of Plaintiff's testimony and evidence at trial, we will not determine at this juncture whether the probative value of the disputed evidence will be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. At this time, the documents at issue will not be admitted for the purpose prohibited by Rule 404(b)(1). If Defendants wish to use the disputed documents at trial, they must make an offer of proof as to their admissibility under the applicable rules, and Plaintiff will have an opportunity to respond.

### B. Motion to Compel Defendants' Financial Information

By letter to the Court dated November 9, 2018, Plaintiff informally advised the Court that he wished to obtain discovery from Defendants regarding their financial status and condition. Plaintiff asserts that the requested information is relevant to Plaintiff's request for punitive damages in connection with his tortious interference and unfair competition claims. Plaintiff's letter was not filed or docketed with the Court. Defendants responded, also by letter, stating their objections to Plaintiff's eleventh-hour effort to compel this discovery.

During the discovery period in this matter, Plaintiff propounded written requests seeking First Financial's total income and revenues for each year from 2000 to the present and Fishman's gross annual income and tax returns for the same period. (*See* Defs.' Opp. to Pl.'s Mot., Ex. A, ECF No. 100.) Defendants objected to these requests on the ground that, *inter alia*, they were overly broad and unduly burdensome. (*Id.*) Later, at Fishman's January 15, 2015 deposition, Plaintiff pursued information about Defendants' finances and defense counsel again objected. (Fishman Dep. 72-73, Defs.' Opp. to Pl.'s Mot., Ex. B.) Defendants suggested at the deposition that Plaintiff "take [the issue of Defendants' financial information] up in front of the judge," and Plaintiff stated, "I guess at some point we may have to." (*Id.* at 73.) Plaintiff, however, did not

raise the issue with the Court or file a motion to compel at any time in the ensuing years, even though the discovery deadline was extended three times at the parties' request after Fishman's deposition. (*See* ECF Nos. 68, 71, 72.) Discovery in this case has now been closed since July 2015, yet Plaintiff did not raise the issue of punitive damages discovery with the Court until November 9, 2018—a mere 17 days before the then-scheduled trial date—and then only raised it informally by letter. Plaintiff did not file the instant Motion until November 21, 2018, less than two months before the parties' final pre-trial submissions were due under the Ninth Amended Scheduling Order and less than three months before the current trial date.

Under these circumstances, Plaintiff's request to re-open discovery and require Defendants to compile and produce financial information is untimely. Pursuant to Federal Rule of Civil Procedure 16(b)(4), "scheduling orders, including those that govern the conduct of discovery, may be amended only for 'good cause.'" *EQT Prod. Co. v. Terra Servs.*, LLC, No. 14-1053, 2018 WL 4300554, at *2 (W.D. Pa. Aug. 13, 2018) (quoting Fed. R. Civ. P. 16(b)(4) and denying untimely motion to reopen discovery for inquiry into defendant's financial condition). "Further, [the trial court is] afforded wide discretion in managing its docket and discovery." *Id.* (citing *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010)). Finally, as another court in this Circuit has noted:

> Although Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery must do so in timely fashion. Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations. It is especially important that a party file its motion before discovery cutoff.

*Haase v. Gov't of Virgin Islands*, No. 2002-CV-0110, 2009 WL 792808, at *1 (D. V.I. Mar. 23, 2009) (quoting *Continental Indus., Inc. v. Integrated Logistics Solutions, L.L.C.*, 211 F.R.D. 442, 444 (N.D. Okla. 2002)); *see also Saunders v. Dep't of Correction,* No. 15-1184, 2018 WL

10

4625804, at *2 (D. Del. Sept. 26, 2018) (denying untimely motion to compel); *Yanoski v. Silgan White Cap Americas, LLC*, No. 14-01862, 2016 WL 3406426, at *1-2 (M.D. Pa. June 21, 2016) (denying request, made shortly before trial, to permit discovery related to punitive damages); *Pathmark Stores, Inc. v. Gator Monument Partners, LLP*, No. 08-3082, 2009 WL 2762836, at *1 (E.D. Pa. Aug. 26, 2009) (denying untimely motion to compel).

In short, given the procedural history of this case, and the fact that Plaintiff has known for years that Defendants' financial information might be pertinent to his potentially recoverable damages, Plaintiff has not established good cause to permit the requested discovery. *EQT Prod. Co.*, 2018 WL 4300554, at *2. Moreover, granting Plaintiff's untimely request would prejudice Defendants, forcing them to investigate and respond to the discovery requests while simultaneously preparing for and handling trial, which is scheduled to commence in less than a week. *Yanoski*, 2016 WL 3406426, at *2. Accordingly, Plaintiff's Motion for Discovery will be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motions in Limine and For Discovery will be granted in part and denied in part as set forth in the accompanying Order.

BY THE COURT:

R. BARCLAY SURRICK, J.